SIXTH DIVISION

July 3, 2003

No. 1-02-2725

AMALGAMATED TRANSIT UNION, LOCAL ) Appeal from the

241 and LOCAL 308, ) Circuit Court of

) Cook County. 

Plaintiffs-Appellees, )

)

) No. 01 CH 06243

)

CHICAGO TRANSIT AUTHORITY, )

a Municipal Corporation, ) Honorable

) Donald J. O'Brien, Jr.,

Defendant-Appellant. ) Judge Presiding.

PRESIDING JUSTICE O'BRIEN delivered the opinion of the court:

Local 241 and Local 308 of the Amalgamated Transit Union (the Unions) brought an action to vacate an arbitration award interpreting a provision in their collective bargaining agreement with the Chicago Transit Authority (CTA) pertaining to the formula for calculating pension contributions for CTA employees serving as part-time officers of the Unions.  Finding that the arbitrator had exceeded his authority under the collective bargaining agreement, the circuit court granted summary judgment for the Unions and vacated the arbitration award.  The CTA appeals.  We affirm.

Local 241 is the exclusive representative of a group of employees including, but not limited to, bus drivers employed by the CTA.  Local 308 is the exclusive representative of a group of employees including, but not limited to, rapid transit operators employed by the CTA. 

The Unions and the CTA are parties to a collective bargaining agreement for the term January 1, 1996, through December 31, 1999.  The collective bargaining agreement incorporates a retirement plan for CTA employees that is funded by contributions from both the CTA and participating employees. The CTA and the participating employees contribute to the retirement plan at rates calculated by a percentage of each employee's "compensation."  

Prior to 1990, a fixed  cap formula, known as Rule 14, provided that "compensation" for pension contribution purposes would be calculated as basically CTA pay plus 5%.  Since 1990, the retirement plan eliminated references to the Rule 14 fixed cap formula and provided that "compensation" for full-time and part-time Union officers would consist of the individual's combined "total earnings" from the CTA and the Unions.  The retirement plan also now provides that, for pension purposes, the "compensation" of a union member occupying a position with an International office shall not exceed the compensation of the highest paid officer of the Local.

In July 1996, a dispute arose between the Unions and the CTA over the interpretation of the term "total earnings" in the retirement plan as applied to part-time Union officers.  The CTA claimed that a certain part-time Local 241 officer had retired with an excessively large pension allowance.  The CTA contended that it requested certain documentation from the Union to investigate the matter, and when none was forthcoming, the CTA ceased making contributions to the  retirement fund on the reported earnings of full-time and part-time officers of Local 241.  When the parties were unable to settle the dispute, they agreed to arbitration.

The arbitrator ruled in relevant part as follows:

"[A] reasonable limit on 'total earnings' paid to individuals in part-time Union positions is required and will be imposed.  However, no limit will be imposed on earnings prior to July 1, 1996.

*** Effective July 1, 1996, earnings for pension benefit purposes for individuals in part-time positions with the local Unions will be limited to the following, using the two options in Rule 14 as amended on April 21, 1980:

(a) For the period July 1, 1996, through April 30, 1998, the basic pay as computed under Rule 14, including the 5% adjustment representing average overtime and other pay credits plus up to an additional 20% over and above such base pay.

(b) Effective May 1, 1998, the basic pay as computed under Rule 14, including the 5% adjustment representing average overtime and other pay credits plus up to additional 10% over and above such base pay.

The 20% and 10% additional adjustments are not automatic entitlements.  Any additional compensation over and above the basic pay, as defined above, up to the 20% and 10% additional limits, must be justified by adequate documentation showing payments by the Local Unions for CTA-related work performed for the Union.  What constitutes 'adequate documentation' and 'CTA-related' work is referred to the parties for final determination."

The parties were unable to agree about what constitutes "CTA-related work" and "adequate documentation" and asked the arbitrator for clarification.  On January 12, 2001, the arbitrator answered that with respect to CTA-related work, the Unions had the burden of demonstrating that the activity for which retirement credit was sought was relevant to the CTA's interests and concerns.  With respect to the question concerning adequate documentation, the arbitrator ruled that the CTA was entitled to "reasonably substantive evidence as to the duration and nature of the Union work performed."

The Unions subsequently filed an action to vacate the arbitration award.  The circuit court found that the arbitrator had exceeded his authority and granted the Unions' motion for summary judgment and vacated the arbitration award.   The CTA brought a motion for reconsideration, which the court denied.  The CTA filed this timely appeal.

Summary judgment is appropriate when, viewed in the light most favorable to the nonmoving party, the pleadings, depositions, and admissions on file reveal that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law.  
Ragan v. Columbia Mutual Insurance Co
., 183 Ill. 2d 342, 349 (1998).  The standard of review in cases involving summary judgment is 
de
 
novo
.  
Ragan
, 183 Ill. 2d at 349.

An arbitrator's award is presumptively valid (
Hollister Inc. v. Abbott Laboratories
, 170 Ill. App. 3d 1051, 1062 (1988)) and must be enforced if the arbitrator acted within the scope of his authority.  
American Federation of State, County & Municipal Employees v. State of Illinois
, 124 Ill. 2d 246, 254 (1988).  The United States Supreme Court has stated:

"[A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice.  He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its 
essence from the collective bargaining agreement
.  When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award."  (Emphasis added.) 
United Steelworkers v. Enterprise Wheel & Car Corp.
, 363 U.S. 593, 597, 4 L. Ed. 2d 1424, 1428, 80 S. Ct. 1358, 1361 (1960). 

In deciding whether an award draws its essence from the collective bargaining agreement, the court determines whether the arbitrator limited himself to interpreting the collective bargaining agreement (
Board of Education of Community High School District No. 155 v. Illinois Educational Labor Relations Board
, 247 Ill. App. 3d 337, 345 (1993)); even where the award is based upon the arbitrator's misreading of the contract, the court must uphold the award so long as the arbitrator's interpretation is derived from the language of the contract.  
Polk Brothers, Inc. v. Chicago Truck Drivers, Helpers, & Warehouse Workers Union (Independent)
, 754 F. Supp. 608, 613 (N.D. Ill. 1990), 
aff'd
, 973 F.2d 593 (7th Cir. 1992).  However, the award will be overturned as not drawing its essence from the collective bargaining agreement where the arbitrator based his award on a body of thought, feeling, policy, or law 
outside
 of the contract.  
Anheuser-Busch, Inc. v. Beer, Soft Drink, Water, Fruit Juice, Carbonic Gas, Liquor Sales Drivers, Helpers, Inside Workers, Bottlers, Warehousemen, School, Sightseeing, Charter Bus Drivers, General Promotions Employees, and Employees of Affiliated Industries, Maltster, Laborers, Syrup, Yeast, Food, Vinegar, Brewery, Recycling and Miscellaneous Workers of Chicago and Vicinity, Illinois, Local Union No. 744
, 280 F.3d 1133, 1137 (7th Cir. 2002).

In the present case, the arbitrator acknowledged that under the Rule 14 formula in place prior to 1990, a cap was placed on the compensation of full-time and part-time Union officers for pension contribution purposes, 
i.e.
, their compensation could not exceed their CTA pay plus 5%.   In 1990, the Rule 14 cap was eliminated; the retirement plan now provides that compensation of full-time and part-time Union officers consists of the individual's "total earnings" from the CTA and the Unions.  The arbitrator further acknowledged that the parties never considered capping the "total earnings" of part-time Union officers.  Nevertheless, the arbitrator determined that some type of cap was required and that "the use of a fixed cap of the type introduced in 1953 and as amended on April 21, 1980 [
i.e.
, the Rule 14 formula] is likely to be the least controversial and the best understood method for placing a limit on total earnings."  Accordingly, the arbitrator provided that compensation for pension contribution purposes will again be based on the Rule 14 formula, pursuant to which the compensation of part-time Union officers is capped at CTA pay plus an additional percentage of pay.

In resurrecting the Rule 14 fixed-cap formula, which had clearly been discarded by 1990 under the collective bargaining agreement's retirement plan, the arbitrator did not simply interpret or even misinterpret the agreement; the arbitrator improperly disregarded the agreement itself.  Accordingly, this portion of the arbitral award cannot stand as it does not draw its essence from the collective bargaining agreement.

This case is similar to 
Anheuser-Busch, Inc.
, 280 F.3d 1133.  Anheuser-Busch operates a beer distributorship and employs drivers to deliver their products.  
Anheuser-Busch
, 280 F.3d at 1134.  From May 1986 to April 1989, Anheuser-Busch and the drivers' union operated under a collective bargaining agreement which provided that drivers, whether assisted by a helper or not, received the same commission rate.  
Anheuser-Busch
, 280 F.3d at 1134.  In 1990, the parties adopted a new two-tiered commission payment that provides one commission rate for drivers who work alone and a lower commission rate for drivers who are assisted by a helper. 
Anheuser-Busch
, 280 F.3d at 1134.  This two-tiered commission payment arrangement was incorporated into and a made a part of the parties' 1994 and 1998 contracts.  
Anheuser-Busch
, 280 F.3d at 1134.

During the term of the 1990 and 1994 contracts, Anheuser-Busch continued to pay all the drivers at the one-person commission (higher) rate.  
Anheuser-Busch
, 280 F.3d at 1134.  In early April 1998, Anheuser-Busch announced that effective April 27, 1998, the drivers would henceforth be reimbursed according to the two-tiered commission payment arrangement contained in the 1998 contract.   
Anheuser-Busch
, 280 F.3d at 1135.

The drivers' union filed a grievance protesting Anheuser-Busch's decision to follow the terms of the contract and the dispute proceeded to arbitration.  
Anheuser-Busch
, 280 F.3d at 1135.  The arbitrator sustained the grievance and returned to the terms of the contract in effect prior to 1990 by ordering Anheuser-Busch to pay the higher commission to drivers regardless of whether they were working on one- or two-person routes.  
Anheuser-Busch
, 280 F.3d at 1136.

Anheuser-Busch appealed and the trial court granted summary judgment in favor of the drivers' union and upheld the arbitral award.  
Anheuser-Busch
, 280 F.3d at 1136-37.  The appellate court reversed and remanded with instructions to vacate the arbitral award.  
Anheuser-Busch
, 280 F.3d at 1145.  The appellate court noted that the collective bargaining agreement explicitly stated that it constituted the full and complete agreement of the parties and that the arbitrator had no authority to add to, subtract from, modify or change the terms of the contract.  
Anheuser-Busch
, 280 F.3d at 1135.  The appellate court further noted:

"[The arbitrator] saw fit to withdraw the commission provision specifically delineated in the 1990, 1994, and 1998 contracts and proceeded to add to the agreement while ignoring its clear language and intent ***. 

* * * 

The arbitrator took it upon himself to right what he perceived to be a wrong in the workplace.  In doing so, he improperly injected his personal notions of fairness into his decision and thus manifested 'an infidelity to his obligation' to follow the law and the language of the contract and not to 'add to *** modify or change' any portion of the thoroughly negotiated agreement."  
Anheuser-Busch
, 280 F.3d at 1141, 1144.

The appellate court concluded that the arbitrator had intentionally disregarded the clear, specific language of the contract and had thereby "created an escape hatch through which he could dispense his own brand of industrial justice."  
Anheuser-Busch
, 280 F.3d at 1145.   Accordingly, as the arbitral award failed to draw its essence from the collective bargaining agreement, the appellate court reversed and remanded with instructions to vacate the arbitral award.  
Anheuser-Busch
, 280 F.3d at 1145. 

Similarly, in the present case, the collective bargaining agreement provides that the arbitrator has no authority to add to, subtract from or amend the terms of the agreement; nevertheless, the arbitrator determined that a revision of the "total earnings" concept set forth in the collective bargaining agreement was required to remedy what he viewed as the inequitable pension levels for part-time Union officers.  Accordingly, the arbitrator reimposed a cap based on the Rule 14 fixed-cap formula which had been discarded by 1990.  In so doing, the arbitrator ignored the clear language and intent of the collective bargaining agreement and improperly injected his notions of fairness into the decision by adding, modifying, and changing the agreement.  As in 
Anheuser-Busch
, the arbitrator disregarded the express terms of the collective bargaining agreement in an attempt to dispense his own brand of industrial justice.  Thus, the arbitral award did not draw its essence from the collective bargaining agreement as the arbitrator based the award on some body of thought, feeling, policy or law outside the contract.  Therefore, we vacate the portion of the arbitral award capping the "total earnings" of part-time Union officers.

The CTA argues, though, that the cap on total earnings was properly 
implied
 from the collective bargaining agreement.  In support, the CTA cites 
Polk Brothers, Inc. v. Chicago Truck Drivers, Helpers, & Warehouse Workers Union (Independent)
, 754 F. Supp. 608 (N.D. Ill. 1990). Polk Brothers is in the business of merchandising and retailing home furnishings. 
Polk Brothers
, 754 F. Supp. at 610.  Polk Brothers' distribution center was completely destroyed by a fire on June 1, 1987.  
Polk Brothers
, 754 F. Supp. at 610.  As a result of the fire, Polk Brothers laid off 163 employees.  
Polk Brothers
, 754 F. Supp. at 610.

The employees' union filed grievances with Polk Brothers.  
Polk Brothers
, 754 F. Supp. at 611.  Pursuant to the parties' three collective bargaining agreements, an arbitrator heard the dispute.  
Polk Brothers
, 754 F. Supp. at 611.  Shortly after an arbitration hearing, Polk Brothers notified the employees' union that it would not enter into any successor agreements to the three collective bargaining agreements which were scheduled to terminate, by their own terms, on March 31, 1988.  
Polk Brothers
, 754 F. Supp. at 611-12.

In April 1988, the arbitrator ordered reinstatement and back pay beyond the March 31, 1988, termination date of the collective bargaining agreements.  
Polk Brothers
, 754 F. Supp. at 612.  The trial court ruled that in awarding benefits after the expiration date of the contracts, the arbitrator exceeded his authority under the agreements.  
Polk Brothers
, 754 F. Supp. at 612-16.  The court rejected the argument that the award was properly based on implied terms of the collective bargaining agreements.  The court noted:

"'[C]ontracts have implied as well as express terms, and the authority of an arbitrator to interpret a collective bargaining contract includes the power to discover such terms. ***

Inferring an implied condition must be distinguished from creating one, tenuous as the distinction may be as a practical matter.'" 
Polk Brothers
, 754 F. Supp. at 615, quoting 
Ethyl Corp. v. United Steelworkers of America
, 768 F.2d 180, 186 (7th Cir. 1985).

The court further held that where an arbitrator's award relies on implied terms, "judicial review is limited to whether the arbitrator's solution can rationally be derived from some plausible theory of the general framework or intent of the agreement."  
Polk Brothers
, 754 F. Supp. at 617.  The court held that there was no reasonable or rational basis within the agreement for the arbitrator's award of reinstatement and back pay beyond the contract expiration date.  
Polk Brothers
, 754 F. Supp. at 616.  The court therefore vacated that portion of the arbitrator's award.  
Polk Brothers
, 754 F. Supp. at 616.

Similarly, in the present case, there is no reasonable or rational basis within the agreement for the arbitrator's award capping total earnings of part-time Union officers, especially where the agreement eliminated references to the Rule 14 fixed-cap formula upon which the arbitrator based his award.  Accordingly, we reject the argument that this portion of the arbitrator's award was properly based on implied terms of the collective bargaining agreement. 

The CTA argues that section 3.9(c) of the retirement plan supports the cap on total earnings for part-time Union officers.  We disagree.  Section 3.9(c) provides that for pension contribution purposes, the compensation of a union member occupying a position with an International office shall not exceed the compensation of the highest paid officer of the Local. Thus, section 3.9(c) caps the total earnings of International officers; section 3.9(c) does not cap the total earnings of the part-time officers of the Local Unions at issue here.  Further, nothing in section 3.9(c) supports the reimposition of the Rule 14 fixed-cap formula, which formula was discarded by 1990.  Accordingly, we vacate the portion of the arbitral award capping the "total earnings" of part-time Union officers.

We also vacate the remainder of the arbitral award requiring part-time Union officers to provide adequate documentation showing payments by the Union for "CTA-related" work; these "documentation" and "CTA-relatedness" requirements were conditions the arbitrator imposed in order for the part-time Union officers to reach the maximum caps to base pay and have no meaning now that we are vacating the caps. 

Finally, the CTA argues that the trial court erred by denying its motion for reconsideration.  In its motion for reconsideration, the CTA argued that the trial court violated public policy by vacating the arbitral award.  The CTA's argument is not well-taken, as the CTA points to no public policy requiring the court to uphold an arbitral agreement that does not draw its essence from the collective bargaining agreement.

The CTA also argued in its motion for reconsideration that the trial court should remand to the arbitrator for correction or clarification of the award.  We disagree.  Where, as here, "[t]here is no ambiguity in the award *** it is our duty to resolve the case once and for all now rather than to remand to the arbitrator."  
Automobile Mechanics Local 701 v. Joe Mitchell Buick, Inc.
, 930 F.2d 576, 578 (7th Cir. 1991).

For the foregoing reasons, we affirm the circuit court.

Affirmed.

TULLY and GALLAGHER, JJ.'s concur.