# Illinois Official Reports

## Appellate Court

---

*County of Tazewell v. Illinois Fraternal Order of Police Labor Council*,
**2015 IL App (3d) 140369**

---

| | |
|---|---|
| Appellate Court Caption | THE COUNTY OF TAZEWELL AND TAZEWELL COUNTY SHERIFF, Plaintiffs-Appellants, v. ILLINOIS FRATERNAL ORDER OF POLICE LABOR COUNCIL, Defendant-Appellee. |
| District & No. | Third District<br>Docket No. 3-14-0369 |
| Filed<br>Rehearing denied | April 1, 2015<br>May 13, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Tazewell County, No. 13-L-68; the Hon. Paul P. Gilfillan, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Stephen M. Buck, of Quinn Johnston Henderson Pretorius & Cerulo, of Peoria, for appellants.<br><br>Robert Scott, of Illinois Fraternal Order of Police Labor Council, of Springfield, for appellee. |

Panel              JUSTICE CARTER delivered the judgment of the court, with opinion.
                   Justices Holdridge and Lytton concurred in the judgment and opinion.


**OPINION**

¶ 1        Plaintiffs, the County of Tazewell and the Tazewell County sheriff (collectively, the Employer), brought an action in the trial court to vacate an arbitrator's decision sustaining a grievance that defendant, the Illinois Fraternal Order of Police Labor Council (the Union), had filed over the creation of two non-bargaining-unit supervisory positions within the county sheriff's department. The trial court upheld the arbitrator's decision, sustaining the union's grievance. The Employer appeals. We affirm the trial court's judgment.

¶ 2                                    FACTS
¶ 3        The material facts in this case are not in dispute. The Union represented certain employees of the corrections division of the county sheriff's department. As the representative of those employees, the Union entered into a collective bargaining agreement with the Employer. The agreement addressed several different subject areas, including the scope of coverage, the creation of new positions, and the grievance procedure. As to the scope of coverage, the collective bargaining agreement provided:

"**ARTICLE 1–RECOGNITION**

**Section 1.1–Unit Description**

The Employer hereby recognizes [the Union] as the sole and exclusive collective bargaining representative for the purpose of collective bargaining on any and all matters relating to wages, hours, and all other provisions of this Agreement of employment of all officers in the bargaining unit. The bargaining unit shall include:

All correction officers below the rank of Jail Superintendent.

Exclusions: All other Employees of the Tazewell County Sheriff's Department and any others excluded by the Illinois Public Labor Relations Act. [Citations].

**Section 1.2–Supervisors**

Non-bargaining unit Supervisors may continue to perform bargaining unit work. Such work by supervisors shall not cause any layoff of the bargaining unit employees."[1]

Regarding the creation of new positions, of relevance to this appeal, the collective bargaining agreement provided:

"**ARTICLE 2–MANAGEMENT RIGHTS**

Except as specifically limited by the express provisions of this Agreement, the Employer retains traditional rights to manage all affairs of the Sheriff's Office, as well

---

[1]The actual formatting of the agreement has been changed in some instances to aid the reader.

as those rights set forth in the Illinois Public Labor Relations Act. Such management rights shall include, but are not limited to, the following:

A. to plan, direct, control and determine all operations and services of the County Sheriff's Office;

\*\*\*

C. to establish the qualifications for employment and to decide which applicants will be employed;

\*\*\*

E. to hire, promote, transfer, schedule and assign employees to positions and to create, combine, modify and eliminate positions within the County Sheriff's Office;

\* \* \*

I. to maintain efficiency of County Sheriff's Office operations and services;

J. to determine methods, means, organization and number of personnel by which such operations and services shall be provided[.]"

Finally, as to the grievance procedure, of relevance to this appeal, the collective bargaining agreement provided:

## "ARTICLE 11–DISPUTE RESOLUTION AND GRIEVANCE PROCEDURE

\* \* \*

### Section 11.5–Time Limitations

Grievances may be withdrawn at any step of the grievance procedure without precedent. Grievances not appealed within the designated time limits will be treated as withdrawn grievances with prejudice.

The Employer's failure to respond within the time limits shall not find in favor of the grievant, but shall automatically advance the grievance to the next step, except Step 2; however, in no case shall the time between Step 2 and Step 3 exceed forty-five (45) days. Time limits may be extended by mutual agreement.

\* \* \*

### Section 11.8–Steps in Procedure

Disputes arising under this Agreement shall be resolved as follows:

Step 1. If no agreement is reached between the employee and the Supervisor, as provided in Section 11.2–Dispute Resolution, the grievant may prepare a written grievance on a form mutually agreed to (see Grievance Form Appendix B) and present the same to the Jail Superintendent which shall not be more than fifteen (15) business days from the date of the event or occurrence giving rise to the grievance regardless of the limitation periods provided for in Section 11.2. The Jail Superintendent will respond to [the Union] Rep or the employee in writing within five (5) business days."

The agreement further provided that the question of arbitrability was to be decided by the arbitrator; that the decision of the arbitrator was final and binding upon the Employer, the Union, and the employees involved; and that the arbitrator had "no power to amend, modify, nullify, ignore, add to or subtract from the provisions of the Agreement."

¶ 4    In early October 2011, the sheriff notified all of the department's correctional employees that he was considering establishing one or more non-bargaining-unit supervisory positions

- 3 -

and that he was requesting that anyone who wanted to apply for the positions do so in writing by a certain date later that month. Eventually, two such positions were created, assistant/deputy jail superintendent (AJS) and jail operations supervisor (JOS). Both of the positions were below the rank of jail superintendent. The sheriff believed, after consulting with the county board, the State's Attorney's office, and with his own attorney, that he had the authority under the collective bargaining agreement to create the two new positions and to do so as non-bargaining-unit supervisory positions. By resolution of the county board, the county approved the creation of, and the hiring for, the two new positions. Several people applied for the positions from within the department, and five of the department's current employees were promoted to the positions (one as AJS and four as JOSs, one or more for each work shift). The positions took effect on January 29, 2012. Because the positions were created as non-bargaining-unit positions, union dues were not deducted from the five employees' paychecks.

¶ 5 On March 6, 2012, the Union filed a grievance claiming that the sheriff had failed to recognize the two new positions as being in the bargaining unit and had failed to collect union dues from those five employees. The specific grievance procedure, which required that the grievance be filed with the jail superintendent within 15 days of the event that gave rise to the grievance and that the jail superintendent respond within 5 days, was not followed. Instead, based upon previous instructions from the sheriff and the informal practice of the parties, the Union sent a copy of the grievance to the sheriff's attorney.

¶ 6 The grievance proceeded to arbitration in April 2013. Before the arbitrator, the Employer argued, among other things, that the grievance should be dismissed or rejected because it was not timely filed. The Employer also argued that under the agreement, the sheriff had the power to create the positions in question and to do so as non-bargaining-unit positions. The Union disagreed. After considering the evidence presented, the arbitrator found that the Employer had waived its claim that the grievance had not been timely filed because the Employer did not raise that claim prior to the arbitration hearing. The arbitrator found further that any failure by the Union to strictly follow the grievance procedure did not deprive the arbitrator of jurisdiction to rule on the matters presented for arbitration. In reaching those conclusions, the arbitrator stated in the written order:

> "The Employers' first arbitrability objection is that the grievance was not filed in a timely manner. Arbitrators disagree over whether a failure to raise a timeliness objection prior to the arbitration hearing waives the objection. See *Elkouri & Elkouri, How Arbitration Works* 5-11 (7th ed. Kenneth May ed. 2012) (observing that under such circumstances 'some arbitrators hold that the party waives the objection'). *Cleveland Transit Auth.*, 99 LA 75 (Feldman 1992), cited by the Employers, exemplifies the view that a party may raise a timeliness objection for the first time at the hearing. In *Cleveland Transit*, Marvin Feldman, a highly respected member of the National Academy of Arbitrators, opined that compliance with contractual time limits is a jurisdictional requirement and, accordingly, may be raised at any time.
>
> Throughout my career as an arbitrator, I have adhered to the opposite view. Absent evidence that the parties intend compliance with contractual time limits as a jurisdictional requirement, I have consistently held that contractual time limits are more appropriately analogized to a statute of limitations and failure to raise a timeliness objection prior to the hearing waives the objection. I reiterate that view. Moreover, I

find that the Sheriff's instruction that grievances be sent directly to Mr. Beal [the sheriff's attorney], an instruction to which the Union apparently has acquiesced, does not change the result. It appears that Sheriff Huston has appointed Mr. Beal as the Employers' agent for receipt of grievances at step 1. This, however, does not relieve the Employers, acting directly or [through] their agent[,] Mr. Beal, from the contractual obligation to respond at step 1 and, more precisely, of the obligation to raise a timeliness objection prior to the hearing. Accordingly, I find that the Employers have waived their timeliness objection."

¶ 7   Turning to the merits, the arbitrator ultimately found in favor of the Union and sustained the grievance. In so doing, the arbitrator stated in his written decision:

"Neither party has filed a unit clarification petition with the Illinois Labor Relations Board. Instead, both parties apparently have decided to engage in a game of legal chicken, with each arguing that the burden was on the other to file the unit clarification petition and that the failure to do so compels a finding in support of that party's position. I reject both parties' arguments. As arbitrator, my function is to interpret the parties' contract–in this case specifically Section 1.1 which defines the bargaining unit as all correction officers below the rank of jail superintendent, subject to the exclusion of any position excluded under the [Illinois Public Labor Relations Act (IPLRA)]. Certainly, if either party had petitioned the Illinois Labor Relations Board for unit clarification, I would be bound by the Board's decision. However, in the absence of such a petition and Board ruling, I find that I have the authority to interpret the parties' contract with my interpretation of the IPLRA being merged into my interpretation [of] Section 1.1.

***

Article 2(E) clearly gives the Employers the right 'to create, combine, modify and eliminate positions within the County Sheriff's Office.' Article 2, however, subjects the exercise of that right and all other management rights to being 'specifically limited by the express provisions of this Agreement.' One such express provision is Section 1.1. Thus, whether a position created by the Employers in the exercise of their management rights falls within the bargaining unit is governed by Section 1.1. I reject the Employers' argument that they have the right to determine unilaterally, or even in the first instance subject to the Union filing a unit clarification petition with the Illinois Labor Relations Board, whether a newly created position is within the bargaining unit. That argument is inconsistent with the plain language of Articles 1 and 2 of the contract.

***

There is no dispute that the Deputy/Assistant Jail Superintendent and the Jail Operations Supervisors are correction officers. The critical dispute is over whether they are excluded by the IPLRA. The exclusion that the Employers argue applies is for supervisors. The IPLRA defines 'supervisor' in relevant part as:

[']An employee whose principal work is substantially different from that of his or her subordinates and who has authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, direct, reward, or discipline employees, to adjust their grievances, or to effectively recommend any of those actions, if the exercise of that authority is not of a merely routine or clerical nature,

- 5 -

but requires the consistent use of independent judgment. Except with respect to police employment, the term "supervisor" includes only those individuals who devote a preponderance of their employment time to exercising that authority, State supervisors notwithstanding. Nothing in this definition prohibits an individual from also meeting the definition of "managerial employee" under subsection (j) of this Section. In addition, in determining supervisory status in police employment, rank shall not be determinative. The Board shall consider, as evidence of bargaining unit inclusion or exclusion, the common law enforcement policies and relationships between police officer ranks and certification under applicable civil service law, ordinances, personnel codes, or Division 2.1 of Article 10 of the Illinois Municipal Code, but these factors shall not be the sole or predominant factors considered by the Board in determining police supervisory status.['] [5 ILCS 315/3(r)(1) (West 2012)].

It is readily apparent that whether the Deputy/Assistant Jail Superintendent and the Jail Operations Supervisors are supervisors depends on their principal work and authority. Rank or job title alone [is] not determinative. However, the record before me is devoid of any evidence as to the principal job responsibilities and authority of these two positions. At the hearing, Sheriff Huston testified that he, with the concurrence of the County Board, had the authority, in creating the positions, to determine whether they are in the bargaining unit. In their brief, the Employers contend that their determination that the positions are exempt from the bargaining unit must stand unless and until rejected by the Illinois Labor Relations Board via a unit clarification petition. I have rejected these positions as inconsistent with the plain language of Article 2 and Section 1.1. Accordingly, with no evidence concerning the principal work and authority of the Deputy/Assistant Jail Superintendent and Jail Operations Supervisors, I am unable to find that they are excluded from the bargaining unit by the IPLRA. The grievance must be sustained."

¶ 8 After losing in arbitration, the Employer brought an action in the trial court to vacate the arbitrator's decision. Following briefing and oral arguments on the matter, the trial court upheld the arbitrator's ruling. The Employer appealed.

¶ 9                                      ANALYSIS

¶ 10 On appeal, the Employer argues that the arbitrator erred in finding that the two newly created positions were included in the bargaining unit and in ruling in favor of the Union on its grievance on that basis. The Employer asserts first that the arbitrator's decision should be vacated because it is clear from the face of the decision that the arbitrator manifestly disregarded the law under the Illinois Public Labor Relations Act (IPLRA) (5 ILCS 315/1 *et seq.* (West 2012)) and the law on the burden of proof in a grievance-arbitration proceeding. The Employer claims that its assertion in that regard is shown by the fact that the arbitrator, after specifically noting in the written decision that the Union had the burden of proof and that no evidence had been presented as to whether the two newly created positions were truly supervisory positions as defined in the IPLRA, went on to conclude that he had to sustain the Union's grievance, in the absence of evidence, because he could not find that the two positions were excluded from the bargaining unit. According to the Employer, the arbitrator's ruling in that regard does not reflect an interpretation of section 1.1 of the agreement, as the Union

contends, but, rather, shows that the arbitrator ignored the exclusion provision of the IPLRA (that a supervisor cannot be in the same bargaining unit with the employees he supervises) and that the arbitrator either ignored or incorrectly applied the law on the burden of proof in a grievance proceeding. Second, the Employer argues that the arbitrator's decision should be vacated because it is clear from the face of the decision that the arbitrator exceeded his authority by ignoring the plain language of the collective bargaining agreement. The Employer claims that its assertion in that regard is evidenced by the fact that the arbitrator found that article one of the collective bargaining agreement limited the sheriff's broad powers under article two of the agreement to create positions and to manage the affairs of the department, even though that conclusion was contrary to the plain language of sections 1.1 and 1.2 of the agreement, which excluded from the bargaining unit those employees who were excluded under the IPLRA and recognized the possible existence of non-bargaining-unit supervisors. According to the Employer, rather than interpret the collective bargaining agreement, the arbitrator ignored the plain language to reach the outcome he desired. Third and finally, the Employer argues that the arbitrator's decision should be vacated because it did not draw its essence from the collective bargaining agreement since the arbitrator exceeded his authority by looking outside of the agreement in ruling upon the Employer's timeliness objection. In making that assertion, the Employer contends that the arbitrator admitted in the written decision that he was looking past the collective bargaining agreement, which required that all grievances be filed within 15 days of the occurrence, and instead based his decision on his own personal thoughts, feelings, view as an arbitrator, and personal past practices. The Employer points out that there is no provision in the collective bargaining agreement that required the Employer to make a timeliness objection prior to the actual arbitration hearing and that the agreement itself prohibited the arbitrator from amending, modifying, nullifying, ignoring, or adding to or subtracting from the agreement. For all of the reasons stated, the Employer asks that we reverse the trial court's judgment and that we vacate the arbitrator's decision.

¶ 11    The Union argues that the arbitrator's ruling was proper and should be upheld. The Union asserts that when the appropriate standard of review is applied, there is no basis upon which to vacate the arbitrator's decision. More specifically, as to each of the Employer's assertions, the Union contends that: (1) the Employer has failed to show that the arbitrator deliberately disregarded the law as is necessary to establish a manifest disregard of the law and to justify overturning the arbitrator's decision; (2) the arbitrator's decision clearly drew its essence from the collective bargaining agreement in that the arbitrator recognized the connection between the terms of the agreement and the IPLRA as to who was a member of the bargaining unit but found, as a matter of contract interpretation, since no evidence was presented as to whether the two newly created positions were truly supervisory in nature, that the two newly created positions were included in the bargaining unit; (3) the arbitrator found that the Employer's assertion–that it could unilaterally determine that the two newly created positions were outside of the bargaining unit–was contrary to the plain language of articles one and two of the collective bargaining agreement and rejected that assertion as a matter of contract interpretation; (4) there is no merit to the Employer's contention that the arbitrator ignored provisions of the collective bargaining agreement as the arbitrator specifically discussed in his decision the sheriff's powers under article two of the agreement and explained why he disagreed with the Employer's interpretation of article two; (5) the Employer's contention that the arbitrator ignored the law on burden of proof is misplaced–the Union had to show only that

the collective bargaining agreement had been violated and did not have to present evidence as to whether the two newly created positions were truly supervisory in nature; (6) the arbitrator did not exceed his authority in ruling in favor of the Union on the grievance but, rather, was well within his rights to consider his knowledge, experience, and prior arbitration precedent in deciding the questions that had been presented to him, including the question of timeliness/arbitrability; (7) it is "hypocrisy" for the Employer to argue that the Union failed to follow the procedure specified in the collective bargaining agreement when the sheriff himself instructed the Union not to follow that procedure; (8) there is no time limit contained in the collective bargaining agreement for the Union to send the grievance to the sheriff's attorney as the Union was instructed to do by the sheriff; (9) even if the arbitrator made an error in interpreting the IPLRA, ignored the law on the burden of proof, ignored certain provisions of the collective bargaining agreement, or exceeded his authority, those reasons do not provide a sufficient basis upon which to vacate the arbitrator's decision under the law; and (10) the fact that the Employer disagrees with the arbitrator's interpretation of the law or of the contract is not a sufficient basis upon which to overturn the arbitrator's decision. For all of the reasons stated, the Union asks that we affirm the trial court's judgment and uphold the arbitrator's ruling.

¶ 12        Arbitration in a collective bargaining situation is a unique type of arbitration; it is treated differently than other types of arbitration and special rules apply. See *Board of Trustees of Community College District No. 508 v. Cook County College Teachers Union, Local 1600*, 74 Ill. 2d 412, 418-19 (1979) (*District No. 508*). Although judicial review of an arbitrator's award in general is very limited (*Griggsville-Perry Community Unit School District No. 4 v. Illinois Educational Labor Relations Board*, 2013 IL 113721, ¶ 18 (*Griggsville*)), it is even more limited in collective bargaining cases (*District No. 508*, 74 Ill. 2d at 418. That standard of limited review reflects the intent of the legislature in enacting the Uniform Arbitration Act to provide finality for labor disputes submitted to arbitration. See 710 ILCS 5/12 (West 2012); *American Federation of State, County & Municipal Employees v. Department of Central Management Services*, 173 Ill. 2d 299, 304 (1996) (*AFSCME*). When an arbitration award has been entered pursuant to a collective bargaining agreement, the grounds for vacating, modifying, or correcting the award are only those grounds that existed under the common law–fraud, corruption, partiality, misconduct, mistake, or failure to submit the question to arbitration. See 710 ILCS 5/12(e) (West 2012); *AFSCME*, 173 Ill. 2d at 304; *Board of Education of The City of Chicago v. Chicago Teachers Union, Local No. 1*, 86 Ill. 2d 469, 474 (1981) (*Chicago Teachers Union*); *Water Pipe Extension, Bureau of Engineering Laborers' Local 1092 v. City of Chicago*, 318 Ill. App. 3d 628, 635-36 (2000) (*Water Pipe*); see also *White Star Mining Co. of Illinois v. Hultberg*, 220 Ill. 578, 601-03 (1906) (discussing the grounds under the common law for overturning an arbitration award). Thus, when the common-law standard applies, a court must enforce a labor-arbitration award if the arbitrator acted within the scope of his authority and the award drew its essence from the parties' collective bargaining agreement. *AFSCME*, 173 Ill. 2d at 304-05; *Water Pipe*, 318 Ill. App. 3d at 636. The determination thereof is a question of law that is subject to *de novo* review on appeal. See *Griggsville*, 2013 IL 113721, ¶ 20.

¶ 13        A presumption exists that an arbitrator did not exceed his authority in making his decision. *Rauh v. Rockford Products Corp.*, 143 Ill. 2d 377, 386 (1991) (stating the rule in the context of a non-collective-bargaining situation). In a collective bargaining situation, the scope of an

arbitrator's power and authority is generally determined by the provisions of the agreement itself and what the parties have agreed to submit to arbitration. See *District No. 508*, 74 Ill. 2d at 419; *Chicago Teachers Union*, 86 Ill. 2d at 474. Typically, the parties provide in the collective bargaining agreement that the arbitrator is to decide disputes involving the application and interpretation of the agreement. *District No. 508*, 74 Ill. 2d at 419. "Such a provision is both the source and the limit of the arbitrator's power." *Id*. An arbitrator exceeds his authority when he decides matters that were not submitted to him for resolution. *Id*. If an arbitrator exceeds the scope of his authority in making a decision, his award must be vacated. See *AFSCME*, 173 Ill. 2d at 304-05; *Water Pipe*, 318 Ill. App. 3d at 634.

¶ 14    An arbitration award draws its essence from the collective bargaining agreement, when the arbitrator, in making his decision, limits himself to interpreting and applying the agreement. See *Griggsville*, 2013 IL 113721, ¶ 19; *Amalgamated Transit Union, Local 241 v. Chicago Transit Authority*, 342 Ill. App. 3d 176, 180 (2003) (*Amalgamated*). An arbitrator may not, under either the common law or the statutory approach (not discussed here), change or alter the terms of the collective bargaining agreement (*Water Pipe*, 318 Ill. App. 3d at 634); nor is it the arbitrator's function to dispense his own brand of industrial justice (*Griggsville*, 2013 IL 113721, ¶ 19). Although an arbitrator may look to many sources for guidance in making his determination, if his award is based upon a body of thought, feeling, policy, or law outside of the collective bargaining agreement, the award will be overturned as not being drawn from the essence of the agreement. See *Griggsville*, 2013 IL 113721, ¶ 19; *Amalgamated*, 342 Ill. App. 3d at 180.

¶ 15    Questions as to the interpretation of the collective bargaining agreement are for the arbitrator to decide, not the court, since that is what was bargained for by the parties. *AFSCME*, 173 Ill. 2d at 305. A court will inquire into the merits of the arbitrator's interpretation of the agreement only to the extent necessary to determine if the award drew its essence from the agreement so as to prevent a manifest disregard of the parties' agreement from occurring. See *District No. 508*, 74 Ill. 2d at 421; *Griggsville*, 2013 IL 113721, ¶ 18 (stating that when the parties have contracted to have their disputes settled by an arbitrator, rather than a judge, the parties have agreed to accept the arbitrator's view of the facts and interpretation of the contract, and a court has no business weighing the merits of the grievance). An arbitrator's award is presumed to be valid (*Amalgamated*, 342 Ill. App. 3d at 179) and, whenever possible, must be construed in such a manner as to uphold its validity (*Chicago Teachers Union*, 86 Ill. 2d at 477). Therefore, establishing that an arbitrator has failed to interpret the collective bargaining agreement and has, instead, imposed his own personal view of right and wrong on the labor dispute is a high hurdle. *Griggsville*, 2013 IL 113721, ¶ 20. It is not enough to show that the arbitrator committed an error, even a serious one. *Id*. Rather, it must be shown that there is no interpretive route to the award, so that a noncontractual basis can be inferred as the basis for the arbitrator's decision. *Id*. If the arbitrator's award is derived from the language of the agreement, the court may not overturn the award, even if the court disagrees with the arbitrator's interpretation or believes that the arbitrator misread the agreement. See *AFSCME*, 173 Ill. 2d at 305; *Water Pipe*, 318 Ill. App. 3d at 637-40; *Amalgamated*, 342 Ill. App. 3d at 180.

¶ 16    In the present case, after having reviewed the record and the arbitrator's decision, we find that the Employer's claims, to the extent that they apply, must be rejected for the reasons that follow. First, despite the Employer's assertions to the contrary, it is clear from the written

ruling of the arbitrator that the arbitrator did not commit a manifest disregard of the law or of the collective bargaining agreement in making his decision. In ruling in favor of the Union on the grievance, the arbitrator specifically discussed the definition of "supervisor" as set forth under the IPLRA and also discussed the burden of proof that was on the Union to establish that a violation of the collective bargaining agreement had occurred. In the context of that applicable law, the arbitrator interpreted the relevant provisions of the collective bargaining agreement, which he found to be articles one and two. According to the arbitrator, although the sheriff had broad management powers under article two of the agreement, those powers were limited by the provisions of article one. Reading the two articles together, the arbitrator interpreted articles one and two of the agreement to mean that any newly created positions below that of jail supervisor, such as the ones in the present case, were included in the bargaining unit, unless they were shown to be excluded therefrom under the IPLRA. In reaching that conclusion, the arbitrator rejected the Employer's contention that it had the power to unilaterally determine that the two newly created positions would be non-bargaining-unit positions. The arbitrator found that the Employer's contention in that regard was contrary to the plain language of articles one and two of the collective bargaining agreement. The arbitrator's decision in that regard was not a result of the arbitrator ignoring the IPLRA or the law on the burden of proof or the provisions of the collective bargaining agreement, as the Employer asserts, but was, instead, the arbitrator's interpretation of the language of the agreement within the context of what he understood to be the law. Thus, the Employer's manifest disregard of the law/agreement claim must be rejected. See *Griggsville*, 2013 IL 113721, ¶ 19; *Chicago Teachers Union*, 86 Ill. 2d at 477 (stating that an error of judgment in law is not a ground for vacating an arbitrator's award when the interpretation of the law is entrusted to the arbitrator and that a court may review the legal reasoning behind an arbitrator's decision only when it appears on the face of the award that the arbitrator was so mistaken about the law that the award would have been different had the arbitrator been apprised of the mistake); *Amalgamated*, 342 Ill. App. 3d at 180; *Tim Huey Corp. v. Global Boiler & Mechanical, Inc.*, 272 Ill. App. 3d 100, 106-07 (1995) (stating in the context of a non-collective-bargaining situation that an arbitration award will not be vacated for a manifest disregard of the law unless it has been shown that the arbitrator deliberately disregarded the law; a mere error in the law or a failure by the arbitrator to understand or apply the law is insufficient).[2]

¶ 17    Second, it is also clear from the arbitrator's written decision that his interpretation of the collective bargaining agreement was taken directly from the language of the agreement itself and from his reading of the interaction between article two (the sheriff's management powers) and article one (the members of the collective bargaining unit). It is not for this court to determine whether that interpretation was correct. See *District No. 508*, 74 Ill. 2d at 421; *Griggsville*, 2013 IL 113721, ¶ 18. Because the arbitrator's decision was clearly based upon the language of the collective bargaining agreement, the Employer's assertion–that the arbitrator exceeded his authority by going beyond the agreement–must be rejected. See *Griggsville*, 2013 IL 113721, ¶ 19; *Amalgamated*, 342 Ill. App. 3d at 180.

---

[2]We take no position on whether the rule from *Tim Huey Corp*. would apply under the common law approach in a collective bargaining situation and only cite the rule here, while assuming for argument's sake that it applies, because the Employer in this appeal has argued a manifest disregard of the law.

¶ 18          Even as to the issue of the timeliness of the grievance, we are not persuaded by the Employer's argument to reach the opposite conclusion. There is no dispute in this case that the Employer instructed the Union to follow a procedure for filing the grievance that was different than the grievance process that was provided for in the collective bargaining agreement. In addition, the agreement itself specifically allowed the applicable time deadlines to be extended by mutual agreement of the parties. The agreement was silent, however, as to when any objection to the timeliness of a grievance had to be made. Thus, the matter was left to the determination of the arbitrator. See *AFSCME*, 173 Ill. 2d at 306 (stating that where the collective bargaining agreement did not delineate the time frames within which disciplinary action had to be commenced and was silent as to the remedies that were available once an infraction was found, those matters were left for the arbitrator to determine). Under the circumstances of the present case, we find that the arbitrator's decision drew its essence from the collective bargaining agreement, even on the issue of the timeliness of the grievance. See *Griggsville*, 2013 IL 113721, ¶ 19; *AFSCME*, 173 Ill. 2d at 306. In short, the parties bargained for the arbitrator's expertise and experience on the issues that were presented, and that was exactly what the parties received. See *AFSCME*, 173 Ill. 2d at 305; *American Federation of State, County & Municipal Employees v. State*, 124 Ill. 2d 246, 254 (1988) (" '[w]hen an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem' " (quoting *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960))).

¶ 19          Third and finally, we are also not persuaded by the Employer's assertion that the arbitrator exceeded his authority in making his ruling. To the contrary, it is abundantly clear from the arbitrator's written decision that the arbitrator interpreted the relevant sections of the agreement, as he was specifically authorized to do, and determined that the two new positions were included in the bargaining unit. As the Union contends, the Employer in this appeal has failed to establish a single basis upon which to vacate the arbitrator's decision. See 710 ILCS 5/12 (West 2012); *AFSCME*, 173 Ill. 2d at 304-05; *Chicago Teachers Union*, 86 Ill. 2d at 474; *Water Pipe*, 318 Ill. App. 3d at 635-36. The arbitrator's decision, therefore, must be upheld.

¶ 20                                                    CONCLUSION
¶ 21          For the foregoing reasons, we affirm the judgment of the circuit court of Tazewell County, which denied the Employer's motion to vacate and confirmed the arbitrator's decision.

¶ 22          Affirmed.