NOTICE
Decision filed 04/30/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 241134-U

NO. 5-24-1134

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| POLICEMEN'S BENEVOLENT LABOR COMMITTEE, | ) ) ) | Appeal from the Circuit Court of Madison County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 23-MR-222 |
| THE COUNTY OF MADISON and JEFF CONNOR, in his official capacity as Sheriff of Madison County, | ) ) ) ) ) | Honorable Ronald J. Foster Jr., |
| Defendants-Appellees. | ) | Judge, presiding. |

JUSTICE BOIE delivered the judgment of the court.
Justices Moore and McHaney concurred in the judgment.[*]

**ORDER**

¶ 1    *Held*:    The circuit court properly upheld the arbitration award, where the arbitrator did not manifestly disregard the law, did not exceed his authority under the collective bargaining agreement, and the award does not violate public policy.

¶ 2    On August 14, 2023, the Policemen's Benevolent Labor Committee (Union) filed a petition in the circuit court of Madison County seeking to vacate an arbitration award issued by Arbitrator Robert Bailey. The Union filed a motion for summary judgment on April 29, 2024, alleging that the arbitrator exceeded the scope of his authority, manifestly disregarded the law, and issued an

---

[*]Justice Moore fully participated in the decision prior to his retirement. See *Cirro Wrecking Co. v. Roppolo*, 153 Ill. 2d 6 (1992).

1

award in violation of public policy. The County of Madison and Jeff Connor, in his official capacity as Sheriff of Madison County (County), opposed the petition and filed a cross-motion for summary judgment seeking confirmation of the award.

¶ 3　On September 23, 2024, the circuit court granted the County's cross-motion for summary judgment, denied the Union's petition to vacate, and confirmed the arbitration award. For the reasons that follow, we affirm the judgment of the circuit court.

¶ 4　　　　　　　　　　　　　I. BACKGROUND

¶ 5　The County and the Union were parties to a collective bargaining agreement (CBA), effective from December 1, 2017, until November 31, 2020. The CBA governs the terms and conditions of employment for the bargaining unit employees within the Madison County Sheriff's Office (Sheriff's Office), including employees assigned to patrol, communications, and jail divisions. The provisions of the CBA most relevant here are articles 1, 11, 13, and 27. Article 1 granted the County the "sole and exclusive right" to direct the workforce, determine the amount of work needed, and assign employees to shifts. Article 11 provided that the agreement "shall not be construed as a guarantee of hours of work per day, or per week or pay period." Article 13 set forth a premium compensation program for those employees required to work on designated holidays, and finally, article 27 bound both parties to comply with federal and state statutes.

¶ 6　Prior to November 2020, certain employees, including process servers and jail captains, regularly worked holidays. Other employees did so as well, albeit less frequently. In 2020, the County anticipated a budget shortfall and thus, directed the Sheriff's Office to reduce expenditures. In response, the Sheriff's Office evaluated its expenditures and identified holiday pay as a potential area for cost reduction. On November 9, 2020, the Sheriff's Office announced a directive limiting the ability of certain employees to work on contractual holidays. Following that announcement,

2

employees not assigned to patrol squads were informed that they would not be permitted to work contractual holidays absent approval for necessary circumstances. The County implemented the directive immediately, including for the upcoming Veterans Day holiday, scheduled for November 11, 2020. As the County announced and implemented the directive, it and the Union were simultaneously engaged in negotiations for a new collective bargaining agreement. The Union received notice of the directive on November 9, 2020.

¶ 7    On November 16, 2020, the Union filed a grievance alleging that the directive altered prior holiday work practices and denied employees the opportunity to work holidays. The County denied the grievance at each step of the grievance procedure, and the matter proceeded to arbitration. On April 5, 2023, the parties presented the grievance to Arbitrator Bailey for final and binding arbitration. Following a hearing and post-hearing briefing, Arbitrator Bailey issued his award on July 5, 2023, concluding that the County did not violate the CBA in issuing the November 9, 2020, directive. In denying the Union's grievance, Arbitrator Bailey concluded that the County's directive did not alter any mandatory subject of bargaining. Rather, he found that the directive reflected the County's exercise of rights already conferred to it by the CBA.

¶ 8    To support this conclusion, he relied on article 1's grant of authority to determine the amount of work needed, and to assign employees accordingly. He also relied on article 11's disclaimer of any guarantee of hours, as well as article 13's limitation of premium holiday pay to those employees "required to work on a holiday." From these provisions, Arbitrator Bailey found that the County was not obligated to schedule nonessential employees on holidays, and that the directive merely curtailed unnecessary work rather than alter any entitlement under the CBA. Arbitrator Bailey further determined that, to the extent the directive implicated collective

3

bargaining considerations, the Union had both notice of the directive and an opportunity to raise the issue during ongoing negotiations but failed to do so.

¶ 9    Subsequently, the Union filed a petition in the circuit court on August 14, 2023, seeking to vacate the arbitration award. The petition asserted that Arbitrator Bailey disregarded the law, namely, the Illinois Public Labor Relations Act (Act) (5 ILCS 315/1 *et seq.* (West 2018)), exceeded his authority, and issued an award contrary to public policy. After about eight months of motion practice, the Union repeated these arguments on April 29, 2024, when it filed its motion for summary judgment. The County responded on August 2, 2024, by filing a cross-motion for summary judgment. On September 23, 2024, the circuit court denied the Union's petition, denied the Union's motion for summary judgment, and granted the County's cross-motion for summary judgment. This timely appeal followed.

¶ 10                                    II. ANALYSIS

¶ 11    On appeal, the Union contends that the circuit court erred in confirming the arbitration award. Specifically, the Union argues that Arbitrator Bailey (1) manifestly disregarded the law by upholding the County's directive without requiring compliance with the Act, (2) exceeded his authority under the CBA by excusing conduct allegedly prohibited by law, and (3) issued an award that violated public policy.

¶ 12                              A. Standard of Review

¶ 13    In Illinois, judicial review of an arbitration award is very limited and even more limited in collective bargaining cases. *County of Tazewell v. Illinois Fraternal Order of Police Labor Council*, 2015 IL App (3d) 140369, ¶ 12. "The Act contemplates judicial disturbance of an award only in instances of fraud, corruption, partiality, misconduct, mistake, or failure to submit the question to arbitration." *American Federation of State, County & Municipal Employees v.*

4

*Department of Central Management Services*, 173 Ill. 2d 299, 304 (1996); see 710 ILCS 5/12 (West 2018). This heightened standard reflects the legislature's intent to provide finality for labor suits submitted to arbitration. See *Tazewell*, 2015 IL App (3d) 140369, ¶ 12; *Central Management Services*, 173 Ill. 2d at 304. Thus, we consider the merits of the arbitrator's interpretation only to determine whether the arbitrator's award drew its essence from the agreement, and thereby prevent a manifest disregard of the agreement between the parties. *Board of Trustees of Community College District No. 508 v. Cook County College Teachers Union, Local 1600, AFT, AFL/CIO*, 74 Ill. 2d 412, 421 (1979). This determination is a question of law, which we review *de novo*. *Tazewell*, 2015 IL App (3d) 140369, ¶ 12. It is not enough to show that the arbitrator has committed an error, even a serious one. *Griggsville-Perry Community Unit School District No. 4 v. Illinois Educational Labor Relations Board*, 2013 IL 113721, ¶ 20. Rather, the challenging party must show that there is "no interpretive route to the award," so that one can only infer a noncontractual basis for the award. (Internal quotation marks omitted.) *Id.*

¶ 14        B. Arbitrator Bailey Did Not Manifestly Disregard the Law

¶ 15    The Union argues that Arbitrator Bailey manifestly disregarded the Act, incorporated into the CBA via article 27. Put simply, the Union's argument proceeds as follows: (1) holiday hours are a mandatory subject of bargaining, (2) via the directive, the County made a unilateral change to its holiday hours policy, thereby, (3) presenting the Union with a *fait accompli*, and violating its obligation under the Act to bargain in good faith. Consequently, (4) because Arbitrator Bailey was fully informed of section 10(a)(4) of the Act (5 ILCS 315/10(a)(4) (West 2018)), yet upheld the County's conduct, his award amounts to a deliberate disregard for the law and not merely error in its application.

¶ 16 A reviewing court will not set aside an arbitration award because of an arbitrator's errors in judgment or mistakes of law or fact. *Garver v. Ferguson*, 76 Ill. 2d 1, 7 (1979). Even gross errors of judgment in law or a gross mistake of fact will not undermine an award. *Id.* at 10-11. This "manifest disregard for the law" standard provides an almost nonexistent standard of review, as "it must be demonstrated that the [arbitrator] deliberately disregarded what [he] knew to be the law in order to reach the result [he] did" (internal quotation marks omitted). *Tim Huey Corp. v. Global Boiler & Mechanical, Inc.*, 272 Ill. App. 3d 100, 106, 107 (1995); *Quick & Reilly, Inc. v. Zielinski*, 306 Ill. App. 3d 93, 99 (1999) (quoting *Health Services Management Corp. v. Hughes*, 975 F.2d 1253, 1267 (7th Cir. 1992)).

¶ 17 It is true that section 10(a)(4) of the Act provides that it is an unfair labor practice for an employer "to refuse to bargain collectively in good faith with a labor organization which is the exclusive representative of public employees in an appropriate unit." 5 ILCS 315/10(a)(4) (West 2018). It is further true that "[a] public employer *** violates its obligation to bargain in good faith *** when it makes a unilateral change in a mandatory subject of bargaining without granting notice and an opportunity to bargain with its employees' exclusive bargaining representative." (Internal quotation marks omitted.) *City of Springfield v. Policemen's Benevolent & Protective Ass'n, Unit #5*, 2021 IL App (4th) 200164, ¶ 34. However, the Union's argument rests on the predicate that the County's directive affected an obviously mandatory subject of bargaining, or that the directive represented a change to the policies and rights detailed in articles 1, 11, and 13 of the CBA. Arbitrator Bailey noted, however, that article 1 of the CBA "gives the Sheriff the sole and exclusive right to direct the work force and to 'determine the amount of work needed' and to 'assign employees to shifts.' " Further, Arbitrator Bailey observed that article 13 "clearly and unambiguously" limits premium holiday pay to those employees "required to work on a holiday."

6

Article 11, Arbitrator Bailey observed, is also explicit that its language "shall not be construed as a guarantee of hours of work per day, per week, or per work or pay period." From this, Arbitrator Bailey concluded that the November 9, 2020, directive constituted a "basic entrepreneurial function" retained by the County under article 1, and not a mandatory subject of bargaining.

¶ 18    It is clear on the face of the award that Arbitrator Bailey did not ignore the County's obligation to bargain in good faith on a mandatory subject of bargaining. Rather, he determined that the directive did not implicate a mandatory subject of bargaining, and therefore, the obligation to bargain did not apply to the facts before him. We assert no opinion on whether this determination was in error, as it is clear that Arbitrator Bailey did not deliberately disregard what he knew to be the law in making that determination.

¶ 19    The Union attempts to demonstrate, via the test outlined in *Central City Education Ass'n v. Illinois Educational Labor Relations Board*, 149 Ill. 2d 496 (1992), that the County's directive modified a mandatory subject of bargaining. The *Central City* test asks a series of questions to determine whether an issue falls under the category of a mandatory subject of bargaining. *Id.* at 905. It does not matter, however, whether we are persuaded by the Union's application of this test. This line of argument, if accepted, would prove merely that Arbitrator Bailey made a mistake of law; not that he deliberately disregarded what he knew to be the law. Because nothing on the face of the award reflects that Arbitrator Bailey manifestly disregarded the law, and the award clearly articulates Arbitrator Bailey's contractual interpretation wherein he considers the provisions of the Act at issue, we cannot overturn the award on the basis that he deliberately disregarded the law. Accordingly, we hold that Arbitrator Bailey did not manifestly disregard the law when making his award.

7

¶ 20                  C. Arbitrator Bailey Did Not Exceed His Authority

¶ 21    The Union next contends that, even if Arbitrator Bailey did not deliberately disregard the law, he nevertheless lacked the power to issue a decision excusing the County's supposed violation of the Act, as incorporated into the CBA via article 27. The Union bases this argument on the principle that "the arbitrator may not change or alter the terms of the collective bargaining agreement, but is authorized only to interpret its existing provisions." *Water Pipe Extension, Bureau of Engineering Laborers' Local 1092 v. City of Chicago*, 318 Ill. App. 3d 628, 634 (2000). The Union argues that the County violated the Act, and thereby the CBA, by allegedly implementing a new, unilateral, policy about whether employees could continue to work on holidays and thus, earn holiday premium pay.

¶ 22    Once again, the Union's argument rests on its assumption that the County's holiday directive constituted a change to a mandatory subject of bargaining set forth in the CBA. However, as Arbitrator Bailey observed, article 1 of the CBA already granted the County the "sole and exclusive right" to "assign employees to shifts and determine the amount of work needed"; article 11 explicitly stated that it "shall not be construed as a guarantee of hours of work per day, per week, or per work or pay period"; and article 13 expressly limited premium holiday pay to those employees "*required* to work on a holiday" (emphasis added). Thus, Arbitrator Bailey did not alter or ignore the terms of the CBA. Rather, he interpreted its existing provisions to conclude that the County's directive fell within its managerial authority.

¶ 23    Contrary to the Union's framing, Arbitrator Bailey's award did not excuse any violation of the Act's prohibition against unilateral changes to mandatory subjects of bargaining. Instead, Bailey's award concludes that, in essence, the holiday directive was not a change in policy sufficient to trigger the Act's prohibition. As this reasoning is based on the language of the CBA

8

itself, and thus draws its essence from the agreement, we may not substitute our judgment for that of the arbitrator, as it is the arbitrator's resolution of disputes under the CBA that was bargained for by the parties. See *Central Management Services*, 173 Ill. 2d at 304-05.

¶ 24    The Union has not demonstrated that Arbitrator Bailey exceeded his authority. His award reflects an interpretation of the CBA, but not an alteration of its terms. Accordingly, the Union's attempt to overturn the award on this basis fails.

¶ 25                    D. The Award Does Not Violate Public Policy

¶ 26    Finally, we briefly address whether Arbitrator Bailey's award violated Illinois public policy. An award will be vacated "if it is repugnant to established norms of public policy," even if it is properly based on the arbitrator's interpretation of the parties' agreement. *County of De Witt v. American Federation of State, County & Municipal Employees, Council 31*, 298 Ill. App. 3d 634, 637 (1998). This exception is narrow, and "its successful invocation requires a clear showing that the award violates some explicit public policy." *Chicago Transit Authority v. Amalgamated Transit Union, Local 241*, 399 Ill. App. 3d 689, 696 (2010). Application of the public policy exception requires a two-step analysis. We must first determine whether a well-defined and dominant public policy can be identified. *De Witt*, 298 Ill. App. 3d at 637. "If so, we must then determine whether the arbitrator's award, as reflected in his interpretation of the Agreement, violated the public policy." *Id.* "To ascertain the existence of public policy, we will look to our constitution, statutes, and relevant judicial opinions." *Id.* Although "a rote recitation of the exception's two-prong test can be easily made, [its] ultimate applicability to a case is necessarily fact dependant." *Central Management Services*, 173 Ill. 2d at 311.

¶ 27    The Union identifies a mutual duty to bargain in good faith arising from sections 4 and 7 of the Act as the public policy in question. 5 ILCS 315/4, 7 (West 2018). The Union then asserts

9

that the County violated this duty when it presented its "new or changed holiday overtime policy" as a *fait accompli*, without advance notice nor an opportunity to bargain.

¶ 28    Even if we grant that the duty to bargain in good faith is a well-defined and dominant public policy in this context, the Union's theory again assumes that the County's directive was a change to a mandatory subject of bargaining. For reasons previously discussed, Arbitrator Bailey determined that the holiday scheduling directive did not implicate a mandatory subject of bargaining. Instead, Arbitrator Bailey found that the CBA granted the County the exclusive right to direct its workforce and further found that article 13 of the CBA established a prerequisite that only those employees *required* to work holidays were entitled to premium holiday pay.

¶ 29    The Union disagrees with Arbitrator Bailey's interpretation of the CBA, but it does not follow that an award based on such an interpretation violates public policy. We might reach a different result if the directive impacted a mandatory subject of bargaining. However, because Arbitrator Bailey determined that it did not, and that determination is grounded in the language of the agreement, the County had no obligation to initiate bargaining over the directive. Moreover, had the Union wished to bargain over non-required holiday work, it could have done so. The Union received notice of the directive while negotiations for a new collective bargaining agreement were ongoing.

¶ 30    Accordingly, the Union has not demonstrated that the arbitration award violates a well-defined and dominant public policy. Its contention therefore fails.

¶ 31                                III. CONCLUSION

¶ 32    For the foregoing reasons, the Union has failed to establish any basis for vacatur. The circuit court properly upheld the arbitration award, where the arbitrator did not manifestly

10

disregard the law, did not exceed his authority under the collective bargaining agreement, and the award does not violate public policy. We therefore affirm the judgment of the circuit court.

¶ 33    Affirmed.